### The Galesburg & Great Eastern R. R. Co. v. Albert L. West.

1. COMMON CARRIERS—*Illegal to Make Additional Charge for Switching Cars from Elevator to Track.*—After a common carrier has established a schedule rate for hauling grain between two stations it can not charge one shipper an additional sum for switching cars between his elevator and the carrier's tracks.

2. SAME—*Must Deliver Cars to Consignee Where He Can be Reached by a Track.*—It is the duty of a railroad when it has received any grain

in bulk for transportation to any place within the state, to transport and deliver the same to any consignee, elevator, warehouse, or place to whom or to which it may be consigned or directed; provided, such person. warehouse or place can be reached by any track owned, leased or used, or which can be used by such carrier.

3. SAME—*What is Not a Voluntary Payment by Shipper Precluding an Action for Recovery of Money Paid.*—Where a shipper in order to obtain cars to ship his grain is compelled to pay an additional charge of $2, or suffer the alternative of paying damages arising from a failure to deliver the grain as agreed, such payment is not voluntary, and will not preclude an action to recover back the money so paid for cars.

Assumpsit.—Appeal from the Circuit Court of Knox County; the Hon. GEORGE W. THOMPSON, Judge presiding. Heard in this court at the April term, 1903. Affirmed. Opinion filed June 8, 1903.

SHUMWAY & RICE, attorneys for appellant.

WILLIAMS, LAWRENCE & WELSH, attorneys for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

This was a suit by Albert L. West, doing business as John West & Company, against the Galesburg & Great Eastern Railroad Company to recover switching charges at $2 per car on ninety-nine cars paid by West to the railroad. The cause was tried without a jury. There was a finding and judgment for the plaintiff for $198 and costs. The defendant appealed.

To the original declaration, which attempted to charge statutory extortion, a demurrer was sustained. The plaintiff filed an amended declaration alleging the collection by the defendant of charges unreasonable and extortionate at common law, to which the defendant filed a plea of not guilty. At the close of the plaintiff's proof the defendant asked the court to find the defendant not guilty. The court denied the motion and the defendant saved an exception to the adverse ruling. The defendant then introduced evidence, thereby waiving the benefit of its motion made at the close of the plaintiff's cause. No propositions of law were submitted to be held by the trial court, nor did the defendant make a motion for a new trial. Exceptions were saved to the finding and judgment of the court. Upon this

state of the record no question of law is presented for our consideration, except in so far as it may become a question of law to determine whether, under the evidence, the plaintiff is entitled to recover.

The defendant's line of railroad extends from Victoria to Wataga, in Knox county of this state, a distance of only ten miles, where it connects with the main line of the Chicago, Burlington & Quincy Railway. The distance from Victoria to Chicago is one hundred and sixty-five miles. There were two grain elevators at Victoria. One was owned by the railroad but apparently operated by Seward & Robinson. The other was owned and operated by the plaintiff, who at his own expense constructed a switch from his elevator to and connected it with the main line of defendant's road. The length of the switch was from 300 to 350 feet. The statute provides that all railroads shall permit connections to be made and maintained with their tracks to and from any and all public warehouses where grain is or may be stored. Thus it will be seen that the construction and connection of the side-track of plaintiff with defendant's system of railroad was authorized by law. It is the duty of the railroad and warehouse commission to fix the maximum rate which may be charged by any common carrier for cars, or delivering freight between given points in the state. This duty was performed by fixing a maximum rate for grain, at 9.72 cents per hundred weight from Victoria to Chicago. The rate, however, fixed and charged by the defendant for delivering grain from Victoria to Chicago was 8.32 cents per hundred weight. This rate seems to have been in effect for some time. It was the established and uniform rate during all the time of the collection of the switching charges here in controversy. The plaintiff received from the defendant at different times, ninety-nine cars to be loaded with grain at his elevator for shipment to Chicago. He was charged and paid therefor to the defendant the schedule rate of 8.32 cents per hundred weight. In order to obtain them he was also required to pay an additional charge of $2 per car for switching them between the tracks of the

defendant and his elevator. It was to recover back the money so paid for switching charges that this suit was brought. The question is, were the switching charges lawful? If they were, the judgment of the Circuit Court must be reversed. If they were not, the judgment should be affirmed.

The defendant seeks to justify the collection of the charges upon the theory that adding the $2 collected for switching to the rate charged for transmitting the freight the total would still be within the maximum rate authorized by the railroad and warehouse commissioners. The arithmetic of the proposition is all right, but the law of the proposition is all wrong. It was optional with the defendant to establish the rate as it saw fit, not exceeding the maximum rate fixed by the commissioners. It exercised that option, and by its mode of business advertised to the world that it would carry grain in car load lots from Victoria to Chicago at 8.32 cents per hundred. While we do not hold that the defendant might never thereafter change or increase the rate, we do hold that so long as it is operating under that rate in dealing with a part of the public, it must deal with all of its patrons upon the same basis. Vincent v. C. & A. R. R. Co., 49 Ill. 33; C. & N. W. Ry. Co. v. The People, 56 Ill. 365. A farmer having a car load of grain to ship to Chicago could obtain a car at a convenient place upon defendant's sidetrack, within 300 or 350 feet from the plaintiff's elevator and load and ship it to Chicago at a 8.32 rate, net; while West would be required, at the same time, to pay the same amount for a similar car load, plus $2. It is manifest that such a course of dealing can not be justified upon the ground that the defendant, including the collection of the switching charges, demanded and received from the plaintiff, for the services rendered, an amount less than the maximum charges authorized by the railroad and warehouse commissioners for a straight shipment between the points in question.

But it is urged that the elevator of the plaintiff is on his private property, not on railroad lands, and for that reason the defendant had a right to make a reasonable charge for the alleged extra or additional service in switching the

cars. The statute provides that every railroad corporation which shall receive any grain in bulk for transportation to any place within the state, shall transport and deliver the same to any consignee, elevator, warehouse, or place to whom or to which it may be consigned or directed : Provided, such person, warehouse or place can be reached by any track owned, leased or used, or which can be used by such corporation; and every such corporation shall permit connections to be made and maintained with its track to and from any and all public warehouses where grain is or may be stored. Under the provisions of the statute if a car of grain ·was received by the defendant company on its line of road billed to plaintiff's elevator at Victoria it would be the duty of the defendant to deliver the car at the elevator. Its duty would not be discharged by leaving it upon its own side-tracks. If it can be required to deliver cars at plaintiff's elevator it is equally its duty to receive them there. Before the enactment of the foregoing provision of the statute giving parties the right to connect side-tracks with systems of railroad in this state it was held that where the owner of property had, with the consent of the railway company, for a valuable consideration, been permitted to lay down a side-track connecting with the track of the company for the purpose of carrying articles of freight to and from such property, and the owner had erected on the side-track a warehouse which was in readiness for the receipt of freight, the side-track was deemed to be a part of the line of the company for the purpose of receiving and delivering freight. And delivery was required to be made at the warehouse the same as if it stood upon a side-track owned by the company. And it was also held that the company had the right to send its cars over the side-track for the purpose of receiving and delivering freight from the warehouse until forbidden by the owner. (Vincent v. C. & A. R. R. Co., 49 Ill. 33.)

The collection of the switching charges being wholly unauthorized and illegal it was extortionate to the whole extent of the amount collected.

Nor can it be said that the plaintiff paid the switching

charges voluntarily and is therefore precluded from maintaining an action to recover back the money paid. The plaintiff was extensively engaged in the grain business. He was entitled to have cars furnished him for the shipment of grain without the payment of the switching charges. However, in order to obtain them, he was compelled to pay the additional $2 per car. It is important to have cars promptly to take advantage of existing market conditions, as well as to comply with contracts for the delivery of grain at a specified time. If he were under contract to deliver a car load of grain at a certain elevator in Chicago on a given day, and could only obtain the car by the payment of the switching charges illegally demanded, and he was left to the alternative of paying the illegal demand or to the payment of damages arising from a failure to deliver the grain as agreed, which might amount to many times the extortionate demand of the defendant—the payment of the switching charges under such circumstances is attended by a degree of financial coercion or business duress which deprives the transaction of every vestige of a voluntary payment.

The judgment of the Circuit Court is affirmed.